IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN
_____

UNITED STATES OF AMERICA,

                              Plaintiff,

v.

BRENDA LEE McCLELLAND,

                              Defendant.

REPORT AND
RECOMMENDATION

09-cr-71-bbc

_____

REPORT

The grand jury has charged defendant Brenda Lee McClelland with unlawfully distributing hydrocodone and possessing hydrocodone with intent to distribute it. Before the court for report and recommendation is McClelland's motion to dismiss the indictment in favor of state prosecution. McClelland invokes the elusive–and perhaps illusive–doctrine of "equitable immunity." *See* dkt. 16. Although McClelland already has pled guilty pursuant to an agreement with the government, she has reserved her right to pursue dismissal. *See* dkt. 28 at 2.

McClelland is not entitled to equitable relief. As a matter of law, state agents cannot bind federal prosecutors; as a matter of fact, the state agents made no actual or implicit promises to McClelland that would entitle her to dismissal of federal charges in favor of state charges.

On December 3, 2008, McClelland was arrested in Menomonie by state agents, questioned by state agents, cooperated actively with those state agents, and then was charged (but not tried or convicted) in Dunn County Circuit Court for the same conduct giving rise to this federal indictment. From this, McClelland posits that she had a reasonable and enforceable expectation that her case would be resolved in state court where she likely would receive a lower prison sentence than in federal court. McClelland argues that the U.S. Attorney's Office is bound by her implicit agreement with Dunn County Sheriff's Sergeant Russ Cragin because

Sergeant Cragin and his co-investigator, Menomonie Police Officer Marty Floczyk, are members of the West Central Drug Task Force, which has a close working relationship with federal prosecutors. "To hold otherwise," argues McClelland, "would subject criminal defendants to 'bait and switch' tactics not compatible with any sense of fairness, or due process." Declaration in Support, dkt. 17, at 2. As an add-on, McClelland also implies that dismissal in favor of state prosecution is required by the U.S. Department of Justice's Petite policy.

The government responds that there were no actual or implied promises made by the state agents, but even if there were, they would not be binding on the federal government. Also, the *Petite* policy does not apply here and it could not be a basis for dismissal in any event.

The doctrine of "equitable immunity" is not well-defined and never has been accepted or rejected by the Seventh Circuit. *See United States v. Fuzer*, 18 F.3d 517, 521 (7th Cir. 1994). The concept of equitable immunity posits that if a promise of immunity induces a defendant to cooperate with the government to her detriment, then due process requires that the prosecutor keep the promise. *Id.* This isn't much different from employing contract law principles to enforce written plea agreements, *see, e.g., United States v. Farmer*, 543 F.3d 363, 374 (7th Cir. 2008); *United States v. Given*, 164 F.3d 389, 395-96 (7th Cir. 1999), except that equitable immunity comes into play in the absence of a written agreement and even can be implied by the conduct of the parties. *See United States v. McHan*, 101 F.3d 1027, 1034 (4th Cir. 1996). But howsoever ethereal the agreement, the defendant must establish "at least a meeting of the minds that the government would refrain from further prosecuting him in exchange for his cooperation." *Id.*

McClelland has not met this burden. McClelland does not claim that Sergeant Cragin ever actually promised her immunity from federal prosecution, or that he purported to be speaking or acting on behalf of the federal government. In fact, Sergeant Cragin never mentioned federal prosecution and it is clear the possibility of federal prosecution did not cross McClelland's mind at the time. If it had, she would have broached her concerns and received clarification from Sergeant Cragin. Essentially, McClelland is arguing that a federal immunity agreement enforceable against a sovereign not party to her conversation with Sergeant Cragin arose from Sergeant Cragin's silence on the topic and the subsequent progression of her case through state court.

Conjecture and innuendo cannot establish the existence of an agreement binding on the U.S. Attorney. *United States v. One Parcel of Real Estate*, 135 F.3d 462, 464 (7th Cir. 1998). In *One Parcel*, the claimants, a husband and wife, had entered a plea agreement with the state and had pled guilty in state court to marijuana cultivation charges. Later the federal government filed a civil forfeiture action to seize their house. The claimants tried to avoid federal forfeiture of their home by arguing that the federal government was bound by their agreement with the state because a federal agent had assisted the state's criminal investigation. The court was unmoved. First, it found that a federal agent's participation in the state's investigation was insufficient to deem the state's agreement binding on federal prosecutors. Apart from this insurmountable first hurdle, the court noted that the claimants' agreement with the state did not even broach the topic of forfeiture. The federal government could not be bound by the claimants' failure to anticipate all future consequences of the state's drug investigation. The court concluded that claimants' "entire argument is built upon quicksand." *Id.* at 464. *See also*

3

*Pharr v. Gudmanson*, 951 F.2d 117, 120 (7th Cir. 1991)("The issue was not misrepresented because it was not represented at all"); *cf. United States v. Mullen*, 2001 WL 34373158 (W.D. Wis. 2001)(Sergeant Cragin's metaphorical invocation of a divided bus from Dunn County to federal court in Madison was not an offer of immunity for cooperation and it could not have bound the federal government even if it was).

In the instant case, as in *One Parcel of Real Estate*, the parties' failure even to mention the federal government's possible interest in the investigation cannot be construed as any sort of an agreement that McClelland would not be prosecuted federally. There was no meeting of the minds on this point and McClelland's attempt to manufacture one is unpersuasive.

But even assuming, *arguendo*, that Sergeant Cragin actually had promised McClelland that she would not be prosecuted federally, the U.S. Attorney's Office cannot be bound by promises made to defendants by state agents, state prosecutors, or federal agents not authorized to speak for the U.S. Attorney. *United States v. Fuzer*, 18 F.3d at 520-21. *See also United States v. Eliason*, 3 F.3d 1149, 1154 (7th Cir. 1993)(court rejects defendant's argument that information voluntarily provided during state plea negotiations resulted in immunity from federal prosecution). The U.S. Attorney's Office did not authorize Sergeant Cragin to negotiate a global plea agreement with McClelland, and it is unavailing for her to impute such authority to Sergeant Cragin based solely on his membership in a regional drug task force that interacts with federal agents, prosecutors and courts.

Finally, to the extent that McClelland implies that she is entitled to relief under the U.S. Department of Justice's *Petite* policy, she is incorrect: the policy is an internal guideline that provides no substantive rights to defendants. *United States v. Heidecke*, 900 F.2d 1155, 1157 n.2

(7th Cir. 1990).  In any event, the policy has not been triggered because the state dropped its prosecution during pretrial proceedings so that jeopardy never attached and McClelland does not face double punishment for one set of acts.

I don't doubt that McClelland was–and remains–surprised, dismayed and angry that the state dropped her case in favor of federal prosecution, and she might be correct in predicting that the outcome for her in the federal system will be harsher. If McClelland had been aware of these possibilities last December, perhaps she would have proceeded differently at that time.  But nothing she might have done could have changed today's outcome.

## RECOMMENDATION

Pursuant to 28 U.S.C. § 636(b)(1)(B) and for the reasons stated above, I recommend that this court DENY defendant Brenda Lee McClelland's motion to dismiss the indictment.

Entered this 23rd day of September, 2009.

BY THE COURT:

/s/

STEPHEN L. CROCKER
Magistrate Judge

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WISCONSIN

120 N. Henry Street, Rm. 540
Post Office Box 591
Madison, Wisconsin 53701

Chambers of
STEPHEN L. CROCKER
U.S. Magistrate Judge

Telephone
(608) 264-5153

September 23, 2009

Elizabeth Altman
Assistant United States Attorney
660 West Washington Avenue, #303
Madison, WI 53703

Peter J. Morin
Attorney at Law
1509 Stout Road, #200
Menomonie, WI 54751

       Re:   United States v. Brenda Lee McClelland
             Case No. 09-cr-71-bbc

Dear Counsel:

    The attached Report and Recommendation has been filed with the court by the United States Magistrate Judge.

    The court will delay consideration of the Report in order to give the parties an opportunity to comment on the magistrate judge's recommendations.

    In accordance with the provisions set forth in the memorandum of the Clerk of Court for this district which is also enclosed, objections to any portion of the report may be raised by either party on or before October 7, 2009, by filing a memorandum with the court with a copy to opposing counsel.

    If no memorandum is received by October 7, 2009, the court will proceed to consider the magistrate judge's Report and Recommendation.

                                       Sincerely,

                                       /s/

                                       Connie A. Korth
                                       Secretary to Magistrate Judge Crocker

Enclosures
cc:    Honorable Barbara B. Crabb, District Judge

6

MEMORANDUM REGARDING REPORTS AND RECOMMENDATIONS

Pursuant to 28 U.S.C. § 636(b), the district judges of this court have designated the full-time magistrate judge to submit to them proposed findings of fact and recommendations for disposition by the district judges of motions seeking:

    (1) injunctive relief;

    (2) judgment on the pleadings;

    (3) summary judgment;

    (4) to dismiss or quash an indictment or information;

    (5) to suppress evidence in a criminal case;

    (6) to dismiss or to permit maintenance of a class action;

    (7) to dismiss for failure to state a claim upon which relief can be granted;

    (8) to dismiss actions involuntarily; and

    (9) applications for post-trial relief made by individuals convicted of criminal offenses.

Pursuant to § 636(b)(1)(B) and (C), the magistrate judge will conduct any necessary hearings and will file and serve a report and recommendation setting forth his proposed findings of fact and recommended disposition of each motion.

Any party may object to the magistrate judge's findings of fact and recommended disposition by filing and serving written objections not later than the date specified by the court in the report and recommendation. Any written objection must identify specifically all proposed findings of fact and all proposed conclusions of law to which the party objects and must set forth

with particularity the bases for these objections. An objecting party shall serve and file a copy of the transcript of those portions of any evidentiary hearing relevant to the proposed findings or conclusions to which that party is objection. Upon a party's showing of good cause, the district judge or magistrate judge may extend the deadline for filing and serving objections.

After the time to object has passed, the clerk of court shall transmit to the district judge the magistrate judge's report and recommendation along with any objections to it.

The district judge shall review de novo those portions of the report and recommendation to which a party objects. The district judge, in his or her discretion, may review portions of the report and recommendation to which there is no objection. The district judge may accept, reject or modify, in whole or in part, the magistrate judge's proposed findings and conclusions. The district judge, in his or her discretion, may conduct a hearing, receive additional evidence, recall witnesses, recommit the matter to the magistrate judge, or make a determination based on the record developed before the magistrate judge.

**NOTE WELL: A party's failure to file timely, specific objections to the magistrate's proposed findings of fact and conclusions of law constitutes waiver of that party's right to appeal to the United States Court of Appeals.** *See United States v. Hall,* 462 F.3d 684, 688 (7th Cir. 2006).